**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: May 28, 2025

S24G0435.  DOCS OF CT, LLC v. BIOTEK SERVICES, LLC.

PINSON, Justice.

Georgia's Arbitration Code sets out a process by which a party may ask a court to vacate an award granted in arbitration. We granted review of this case to determine how to assess whether and when ex parte communications in an arbitration proceeding are grounds for vacating an arbitral award. Although we asked the parties to address several questions in that regard, we reach in this decision only the standard for assessing whether the rights of the affected party are "prejudiced by" ex parte communications. See OCGA § 9-9-13 (b). As we explain below, to establish that its rights were "prejudiced by" one of the listed grounds for vacatur, the party seeking vacatur of an arbitral award under OCGA § 9-9-13 (b) must

show that the conduct in question — here, certain ex parte commu-nications — affected or influenced the outcome of the arbitration. Because the party seeking vacatur of the award in this case failed to make that showing, the Court of Appeals's decision affirming the award is affirmed.

1. *Background*

In April 2018, Docs of CT and Biotek submitted a contract dis-pute to arbitration. An arbitrator found Docs of CT in default as to liability, and a hearing was set to determine damages only. Before that hearing, Docs of CT failed to provide discovery called for in the scheduling order, and as a consequence, the arbitrator told counsel for Docs of CT that the company would not be allowed to introduce evidence at the damages hearing if discovery was not provided. Soon after, counsel for Docs of CT withdrew from representation. No new counsel entered an appearance on behalf of Docs of CT, and Docs of CT never provided the required discovery. After counsel for Docs of CT withdrew, the arbitrator repeatedly told the company's repre-sentative, Dr. J.D. Sidana, that he would not be allowed to present

2

any evidence at the damages hearing both because he was not an attorney and because Docs of CT was in default.

At the damages hearing, Dr. Sidana was allowed to observe but not participate, and the arbitrator did not receive evidence from Docs of CT at the hearing or after it. The arbitrator ultimately awarded Biotek $447,633.49 in "contract damages," interest, and attorney's fees and $1,273,704.48 in "trade secret damages" and attorney's fees.

Docs of CT moved to vacate the arbitration award in superior court under OCGA § 9-9-13, asserting (among other things) that the arbitrator exhibited partiality and engaged in misconduct.[1] In support, Docs of CT submitted to the trial court copies of emails between

---

[1] Docs of CT alleged additional bases for vacatur under OCGA § 9-9-13 (b) in the trial court but we granted review only as to the grounds of misconduct and partiality. Code section 9-9-13 (b) reads, in relevant part, as follows:

> (b) The award shall be vacated on the application of a party who either participated in the arbitration or was served with a demand for arbitration if the court finds that the rights of that party were prejudiced by:
> > (1) Corruption, fraud, or misconduct in procuring the award; [or]
> > (2) Partiality of an arbitrator appointed as a neutral . . . .

3

the arbitrator and Biotek's attorneys that were sent after counsel for Docs of CT withdrew. Dr. Sidana was not copied on any of the emails. Docs of CT pointed out that the Rules of Arbitration that the parties agreed to had prohibited ex parte communications between a party and the arbitrator, with any "necessary" ex parte communication to be conducted through the arbitration service provider.

The ex parte emails included some that were sent before the evidentiary hearing, when the arbitrator asked for copies of exhibits in advance of the hearing and for Biotek to prepare a spreadsheet for purposes of calculating damages; Biotek responded with the requested exhibits and spreadsheet. Docs of CT also pointed to more than 25 emails between the arbitrator and counsel for Biotek that took place after the damages hearing and in which the arbitrator sought information and feedback from Biotek on the arbitrator's damages calculations. Other post-hearing emails included Biotek's emailed submission of a post-hearing brief; the arbitrator's response thanking Biotek for the brief and stating, "You did a good job"; and the arbitrator's request that Biotek's counsel let him know in what

court Biotek filed to enforce the award because the arbitrator "assum[ed he would] need that court to help get Docs of CT's portion of the arbitration fees paid."

After a hearing, the trial court denied Docs of CT's motion and confirmed the award to Biotek, concluding that the alleged ex parte communications did not demonstrate misconduct or partiality by the arbitrator.

The Court of Appeals affirmed. The court explained that the ex parte emails between the arbitrator and counsel for Biotek "should not have happened" but that Docs of CT had not established that the arbitrator was partial. And, assuming that the ex parte emails established misconduct, the Court of Appeals concluded that Docs of CT had not shown that its rights were prejudiced, see OCGA § 9-9-13 (b), because Docs of CT "failed to articulate resulting prejudice" and the record showed that the arbitrator "ultimately declined to award" some of the damages Biotek sought in its post-hearing briefing and emails. *Docs of CT v. Biotek Servs.*, 369 Ga. App. 804, 810-811 (2) (894 SE2d 634) (2023). The court reasoned that Docs of CT

5

had not articulated how it was prejudiced by the alleged misconduct, so the trial court did not clearly err in confirming the award. Id.

Judge Land dissented. He would have concluded that the ex parte emails were both improper and prejudicial, so the award should have been vacated. *Docs of CT*, 369 Ga. App. at 812 (Land, J., dissenting).

2. *Analysis*

We granted review in this case to consider how the standards set out in OCGA § 9-9-13 (b) for vacating an arbitral award apply to ex parte communications. As it turns out, we need to address only one of those standards: the one for assessing prejudice.[2] Under OCGA § 9-9-13 (b), even if one of the listed grounds for vacating an arbitral award is present, the award must be vacated only if the

___

[2] When we granted review, we also asked the parties to address whether an arbitrator violates any ethical rules by communicating with the representative of a corporate entity that is a party to the arbitration if the representative is not a lawyer. Although we do not reach that question, we note that our decisions have not answered it. We have held only that "[i]n this state, only a licensed attorney is authorized to represent a corporation in a proceeding in a court of record, including any proceeding that may be transferred to a court of record from a court not of record." *Eckles v. Atlanta Tech. Group, Inc.*, 267 Ga. 801, 805 (2) (485 SE2d 22) (1997).

court finds that "the rights of [the affected] party were prejudiced by" that ground. That standard is one subject of disagreement between the parties here. Docs of CT contends that ex parte communications during an arbitration proceeding are "per se" prejudicial, while Biotek argues that the affected party must show how the ex parte communications actually caused it harm to secure vacatur of the arbitral award (and that Docs of CT failed to do that). We turn to this question now.

(a) *Prejudice Standard*

Start with what it means for the rights of an affected party to be "prejudiced by" one of the grounds for vacatur. OCGA § 9-9-13 (b). We determine that meaning by reading the relevant language in its "most natural and reasonable way" given the "context in which it appears," see *Chambers v. State*, 320 Ga. 770, 772 (1) (911 SE2d 616) (2025), including the surrounding statutory language, the statute's structure and history, and other law that makes up the legal backdrop against which the language was enacted, see *State v. Cook*, 317 Ga. 659, 660 (1) (893 SE2d 670) (2023). When this "prejudiced by"

language first entered Georgia's Arbitration Code in 1978, see Ga. L. 1978, p. 2278, the verb "prejudice" was used as a general matter to connote being injured, harmed, or affected detrimentally. See e.g., *Prejudice, v.t.*, Webster Deluxe Unabridged Dictionary 1420 (2d ed. 1983) ("to injure or harm, as by some judgment or action; as, his mistake *prejudiced* the outcome"); *Prejudiced, tr. v.,* American Heritage Dictionary 1033 (Family ed. 1979) ("To affect injuriously or detrimentally by some judgment or act").[3] But in legal parlance, the word "prejudice" carried (and still typically carries) with it a particular sense of harm: a material influence on the outcome of the proceeding in question. This outcome-focused understanding of prejudice shows up in various contexts around the time the term was added to our Arbitration Code, from *Brady* violations, see *Taylor v.*

---

[3] We often look to dictionaries from around the time the relevant legal text is enacted as a helpful starting point for understanding the meaning of that text. See *State v. SASS Group, LLC*, 315 Ga. 893, 898-899 (2) (a) (885 SE2d 761) (2023). But as we have often cautioned, dictionaries "cannot be the definitive source of ordinary meaning in questions of textual interpretation because they are acontextual, and context is a critical determinant of meaning." *City of Winder v. Barrow County*, 318 Ga. 550, 555 (1) (899 SE2d 157) (2024).

*State*, 243 Ga. 222, 222-223 (1) (253 SE2d 191) (1979), and constitutional speedy trial claims, see *State v. Madden*, 242 Ga. 637, 637 (250 SE2d 484) (1978), to juror-bias claims, see *Florence v. State*, 243 Ga. 738, 740 (2) (256 SE2d 467) (1979), and claims of ineffective assistance of counsel, see *Strickland v. Washington*, 466 U.S. 668, 692 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984).

And most notably, this is how federal courts have applied materially similar language in the federal Arbitration Code.[4] We have looked to federal decisions applying the federal Arbitration Code as important evidence of the meaning of our own Arbitration Code because our Code's structure and language "closely tracks" the federal one, which was part of the legal backdrop against which our Code was enacted. See *Brookfield Country Club, Inc. v. St. James-*

---

[4] Compare OCGA § 9-9-13 (b) (1) ("The award shall be vacated on the application of a party who either participated in the arbitration or was served with a demand for arbitration if the court finds that *the rights of that party were prejudiced by*: (1) Corruption, fraud, or misconduct in procuring the award." (emphasis added)), with 9 U.S.C. § 10 (a) (3) (allowing a court to vacate an arbitration award upon a party's application "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of *any other misbehavior by which the rights of any party have been prejudiced*." (emphasis added)).

*Brookfield, LLC*, 287 Ga. 408, 412 (1) (696 SE2d 663) (2010).[5] And federal courts have consistently interpreted the requirement that the "rights of any party have been prejudiced by" a ground for vacatur to mean that the conduct in question must have affected or influenced the outcome of the arbitration proceeding. See, e.g., *Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F2d 649, 652-653 (5th Cir. 1979) (party was prejudiced by ex parte communications because the final calculation of damages "hinged on" a figure provided only during the improper ex parte phone call, which conflicted with other evidence from the hearing); *Remmey v. PaineWebber, Inc.*, 32 F3d 143, 149 (III) (B) (4th Cir. 1994) ("the party seeking a vacation of an award on the basis of ex parte conduct must demonstrate that the conduct influenced the outcome of the arbitration" (punctuation omitted) (citing *M&A Elec. Power Coop. v. Local Union No. 702, Int'l Bd. of Elec. Workers*, 977 F2d 1235, 1238 (8th Cir.

---

[5] The relevant provision of the Federal Arbitration Code was enacted in its current form in 1925, see Act of Feb. 12, 1925, ch. 213, § 10, 43 Stat. 885.

1992), *Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pitts-burgh*, 933 F2d 1481, 1490-1491 (9th Cir. 1991), and *Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F2d 52, 57 (3d Cir. 1989), all of which interpret "prejudice" as requiring a showing that ex parte communication or submission of evidence affected the outcome of the proceeding)).[6] These decisions are strong evidence

---

[6] Because OCGA § 9-9-13 (b) parallels 9 U.S.C. § 10, see supra n.5, federal decisions interpreting and applying this language both before and after our similar language was enacted bear on the meaning of that language today. Decisions issued before that language was enacted are especially helpful because those decisions interpreting the same language our legislature apparently borrowed were part of the relevant legal backdrop the legislature is presumed to have been aware of when it enacted that language. See *Todd v. State*, 228 Ga. 746, 750 (187 SE2d 831) (1972) (when the General Assembly enacts a statute based on a similar statute from another jurisdiction, "the judicial construction already placed upon" the other jurisdiction's statute "is considered to accompany [Georgia's version] and is treated as incorporated therein"). See also *Crum v. Jackson National Life Insurance Co.*, 315 Ga. 67, 77 (2) (c) (ii) (880 SE2d 205) (2022) ("we presume that the legislature enacted the new statute 'with full knowledge of' the extant body of decisional law"). But even decisions that followed the enactment can be useful to the extent that they offer persuasive interpretations or applications of the relevant text and the legal standard embedded within it, so long as the federal language remains consistent with the language enacted into Georgia law. See, e.g. *City of Guyton v. Barrow*, 305 Ga. 799, 807 (3) (a), 809-811 (3) (b) (828 SE2d 366) (2019) (reviewing several decades of federal court interpretations of a rule promulgated under the Clean Water Act, as amended in 1987, where the federal law had remained unchanged and the relevant Georgia law was "identical in all material respects" to its federal counterpart). Cf. *Bowden v. The Medical Center, Inc.*, 297 Ga. 285, 291 (2) (a) n.5 (773 SE2d 692) (2015) (noting that a Georgia statute at issue was identical to the 1972 version of a federal statute, such that

11

that the rights of the affected party are not "prejudiced" as that term is used in OCGA § 9-9-13 unless the conduct in question affected or influenced the outcome of the arbitration.

Docs of CT resists this traditional, outcome-focused under-standing of prejudice. It contends that the affected party's "rights are prejudiced by" conduct that causes "any harm" to the party's "right to a fair hearing" (or any other rights implicated) and that the affected party need not show "how the outcome might have been different." But Docs of CT offers no relevant authority in support of this view, and in any event, it does not ultimately help its case. Docs of CT is not wrong that the affected party's rights are prejudiced if its right to a fair hearing is impaired. But the ordinary way to establish that a party was deprived of a fair proceeding, and that its rights were therefore "prejudiced," is to show that the conduct in question affected or influenced the outcome of the proceeding. See, e.g, *Strickland*, 466 U.S. at 687 (III), 694 (III) (B) (a criminal defendant proves

federal decisions and commentary from that period are "persuasive authority," but that the federal statute had since been substantially revised while the Georgia statute had not).

"prejudice" from counsel's deficient performance by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," and a defendant does that by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). So yes, prejudice is, in a basic sense, harm to the affected party's rights, including the right to a fair proceeding. But that harm is ordinarily established by showing an effect or influence on the outcome of the proceeding. And, we conclude, that is the most reasonable understanding of OCGA § 9-9-13 (b)'s prejudice requirement.

(b) *Presumed or Actual Prejudice*

As a general rule, when this prejudice standard applies, the affected party must establish "actual" prejudice by demonstrating how the conduct in question affected or influenced the outcome of the proceeding. See, e.g., *King v. King*, 354 Ga. App. 19, 28 (2) (c) (840 SE2d 108) (2020) (husband showed he was prejudiced by arbi-

trator's "imperfect execution of his authority" in a divorce action because the omission of agreed-upon terms in the arbitration award "severely curtailed" husband's ability to "review the arbitrator's decision for error and to seek meaningful (albeit limited) judicial review of the award"); *Conmac Corp. v. Southern Diversified Development, Inc.*, 245 Ga. App. 895, 898 (1) (c) (539 SE2d 532) (2000) (party demonstrated prejudice from modification of arbitration award where the modified award subjected the party to liability on a bond "where no such liability existed under the original award"); *Sweatt v. International Development Corp.*, 242 Ga. App. 753, 755 (1) (531 SE2d 192) (2000) (parties established they were prejudiced by "[a]n overstepping by the arbitrators of their authority" where the arbitrator awarded actual damages in violation of the terms of the underlying contract between the parties, which permitted only the recovery of liquidated damages); *Totem Marine Tug & Barge, Inc.*, 607 F2d at 652-653 (party showed prejudice from arbitrators' misconduct where the final damages amount owed by it "hinged on" improperly obtained ex parte evidence). By contrast, prejudice is "per

se" or "presumed" — meaning that the affected party need not demonstrate how the outcome was likely affected — only as a rare exception in certain contexts, like claims of actual or constructive denial of (or state interference with) the assistance of counsel, see *Strickland*, 466 U.S. at 692 (III) (B) (citing *United States v. Cronic*, 466 U.S. 648, 659 (III) & n.25 (104 SCt 2039, 80 LE2d 657) (1984)). This rare exception has been applied when there is some reason specific to those contexts for dispensing with the need to prove prejudice on a case-by-case basis and is largely confined to certain constitutional rights of criminal defendants. See, e.g., *Strickland*, 466 U.S. at 692 (explaining that prejudice is presumed in cases of actual or constructive denial of the assistance of counsel or state inference with counsel's assistance because "[p]rejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost").

This case presents no basis for departing from the general rule. Docs of CT offers no particular reason that an affected party could not or need not show how the outcome of a proceeding was affected

or influenced by ex parte communications to establish prejudice in any given case. And although our Court has not had occasion to address a claim seeking vacatur of an arbitral award because of ex parte communications, federal courts that have addressed such claims — both around the time we adopted the federal Code's prejudice language and after — have consistently required the affected party to prove prejudice from such conduct by showing how the ex parte communications affected or influenced the outcome of the proceeding. See *Totem Marine Tug & Barge, Inc.*, 607 F2d at 652-653 (party established prejudice from ex parte phone call where arbitrators obtained the figure that the final award "hinged on"); *Mutual Fire, Marine & Inland Ins. Co.*, 868 F2d at 57 ("mere assertion" that the arbitrators "used" the improperly obtained ex parte information to render their decision and assess a witnesses' credibility was not enough to show the challenger was prejudiced by the misconduct); *Employers Ins. of Wausau*, 933 F2d at 1490 (party "failed to demonstrate that any prejudice resulted from the *ex parte* contacts"); *M&A Elec. Power Coop.*, 977 F2d at 1238 ("party seeking a vacation of an

16

award on the basis of ex parte conduct must demonstrate that the conduct influenced the outcome of the arbitration"); *Remmey*, 32 F3d at 149 (III) (B) (assuming arbitrator's alleged ex parte comments about seating arrangements were improper, appellant failed to show how the remarks influenced the outcome of the arbitration). We conclude that OCGA § 9-9-13 requires the same: the party seeking vacatur of an arbitration award under OCGA § 9-9-13 (b) must establish that its rights were "prejudiced by" one of the listed grounds for vacatur by showing that the conduct in question affected or influenced the outcome of the arbitration.

(c) *Application*

Under the proper standard for assessing prejudice, Docs of CT has not established that its rights were prejudiced by the ex parte communications in this case. Even assuming those communications amounted to misconduct or some other ground for vacatur under OCGA § 9-9-13 (b), Docs of CT offers no basis in the record or otherwise for concluding that they affected or influenced the outcome of the arbitration proceedings. Instead, Docs of CT points to the ex

17

parte emails about exhibits and damages calculations without explaining how it was prejudiced by the ex parte nature of these communications. As just a few examples, it does not show what evidence it would have presented in support of a lower damage award; what objections it could have made or defenses it could have raised to Biotek's exhibits or the arbitrator's damages calculations before, during, or after the hearing that would have altered the final result; what testimony it might have elicited on cross-examination that would have led to a different result; what arguments it would have made in post-hearing briefing to rebut Biotek's damages calculations; or anything else that would tend to show that, but for the ex parte nature of the communications at issue here, the outcome of the arbitration, i.e., the amount of damages awarded to Biotek, likely would have been different.[7] Absent any such showing, Docs of CT

---

[7] Docs of CT suggests that it could not establish prejudice because it was prohibited from offering any evidence at the hearing in the trial court on its motion to vacate, relying on our decision in *Greene v. Hundley*, 266 Ga. 592 (468 SE2d 350) (1996). It is mistaken. In *Greene*, we held that a trial court can vacate an arbitration award only on a finding that one of the grounds enumerated in OCGA § 9-9-13 (b) is present. 266 Ga. at 595-596 (3). To that end, we

18

has failed to establish that its rights were prejudiced by ex parte communications in the arbitration proceeding.

*Judgment affirmed. Peterson, CJ, Warren, PJ, and Bethel, Ellington, McMillian, LaGrua, and Colvin, JJ, concur.*

---

held that the "prohibition against considering the sufficiency of the evidence *as grounds for vacating an arbitration award* is unconditional" and "a reviewing court is prohibited from weighing the evidence submitted before the arbitrator, regardless of whether the court believes there to be sufficient evidence, or even any evidence, *to support the award.*" Id. at 596-597 (3) (emphases added). In other words, we said that neither a trial court nor an appellate court can independently weigh the sufficiency of the evidence to *support* the award because a lack of sufficient evidence is not one of the enumerated grounds on which an arbitration award can be vacated. We said nothing in *Greene*, or any other decision, about what evidence a party can present to a trial court in support of showing that at least one of the enumerated grounds for vacatur exists and that the party was prejudiced by that ground. To be clear, because the burden is on the party seeking vacatur to prove its "rights . . . were prejudiced by" one of the enumerated grounds, OCGA § 9-9-13 (b), it would be prudent for that party to present any and all arguments and evidence it can muster to show how the outcome of the proceeding was affected by the conduct that the party contends fell within one of the statutory grounds for vacating the award. Here, Docs of CT provided proof of the emails that it claims were misconduct but failed to offer any evidence that showed it was prejudiced by the emails, as we have explained above.

19