NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: April 21, 2026

S26Y0093. IN THE MATTER OF DARRYL J. FERGUSON.

PER CURIAM.

This disciplinary matter is before the Court on the Report and Recommendation of the State Disciplinary Review Board ("Review Board"), which adopts Special Master Delia T. Crouch's Report and Recommendation concluding that Darryl J. Ferguson (State Bar No. 250630) violated Rules 1.15(I)(b)(2)(iii), (c) and (d) of the Georgia Rules of Professional Conduct ("GRPC" or "Rule"), found in Bar Rule 4-102(d). The Review Board recommended that the Court suspend Ferguson for 60 days with his reinstatement conditioned on making restitution. Ferguson has filed exceptions to the Review Board's Report and Recommendation, and the Bar has responded. Because we conclude that the Bar has failed to prove that Ferguson violated

Rule 1.15(I) as charged, we impose no discipline and dismiss the case.

1. *Background & Procedural History*

(a) In February 2024, the Bar filed a Formal Complaint charging Ferguson with violations of Rules 1.15(I)(b)(2)(iii), (c), and (d).

Rule 1.15(I) says, in relevant part:

(b) For purposes of this rule, a lawyer may not disregard a third person's interest in funds or other property in the lawyer's possession if:
    (1)  the interest is known to the lawyer, and
    (2)  the interest is based upon one of the following:
        i. A statutory lien;
        ii. A final judgment addressing disposition of those funds or property; or
        iii. A written agreement by the client or the lawyer on behalf of the client guaranteeing payment out of those funds or property.
The lawyer may disregard the third person's claimed interest if the lawyer reasonably concludes that there is a valid defense to such lien, judgment, or agreement.

(c) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property

2

that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(d) When in the course of representation a lawyer is in possession of funds or other property in which both the lawyer and a client or a third person claim interest, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the funds or property as to which the interests are not in dispute.

The maximum penalty for a violation of this rule is disbarment.

The Bar contends that Ferguson violated Rules 1.15(I)(b)(2)(iii), (c), and (d) by disregarding a chiropractor's interest in the settlement funds recovered for two of his clients after Ferguson signed a written agreement regarding that interest. Ferguson timely answered the complaint and denied any Rule violations.

(b) The undisputed facts are as follows. In 2017, Ferguson, who has been a member of the State Bar since 2004, represented two different clients in separate car accident cases; both clients received

3

treatment for their injuries from a chiropractor. In connection with each case, Ferguson and his clients signed a document from the chiropractor entitled "Notice of Doctor's Lien" (hereinafter "Notice").

The clients signed under the first part of the notice, which said: "I hereby authorize and direct you, my attorney, to pay directly to said doctor such sums as may be due owing for chiropractic/physical therapy service rendered me … and to withhold such sums from any settlement, judgment, or verdict which may be paid to you my attorney, or myself, as the result of the injuries for which I have been treated or injuries in connection therewith." The clients acknowledged that they were responsible to pay for the chiropractor's services and that the "agreement" was "made solely for said doctor to give additional protection and in consideration of awaiting payment" and that, if their attorney "does not wish to cooperate in protecting said doctor['s] interest, the doctor will not await payment but may declare the entire balance due and payable." The client promised to "promptly notify said doctor" of any change in attorneys and "promptly deliver a copy of this lien to any

4

substituted or added attorney(s)." Finally, the clients "direct[ed] my attorney to pay said doctor the full cost of treatment in my case." Ferguson signed the second part of the Notice, agreeing, as the clients' attorney, "to observe all of the terms of the above and agree[ing] to withhold such sums from any settlement, judgment, or verdict as may be necessary to adequately protect and fully compensate said doctor."

When Ferguson settled his clients' cases in November 2019, he did not notify the chiropractor of the settlements or pay or negotiate with her for the amounts owing for his clients' treatment. After retaining his fees from the settlement funds, Ferguson disbursed the remaining funds to his clients without paying the chiropractor any amount.

(c) Additional evidence was provided through the testimony of Ferguson and the chiropractor at a hearing before the special master. Ferguson testified as follows. Before the cases at issue, Ferguson had regularly honored agreements signed with the same chiropractor using the same language as the Notice. However,

unlike in prior cases, after each of the two cases at issue here settled, Ferguson's clients asked him not to distribute any funds to the chiropractor. In light of this request, Ferguson conducted research and concluded that the Notice was a notice of a lien (not, for example, a letter of protection); his signature on the Notice was "an acknowledgement of said notice"; and the chiropractor failed to "take[] the adequate protocols necessary to perfect her interest" through the lien. Indeed, at the time the Notices were signed, Georgia law did not allow chiropractors to secure a lien of this kind.[1] Thus, Ferguson determined that there was a valid defense to the Notice because it was "a failed attempt at a lien because it was not perfected" and determined that he could therefore disregard the chiropractor's interest under Rule 1.15(I)(b). See Rule 1.15(I)(b) ("The lawyer may disregard the third person's claimed interest if the lawyer reasonably concludes that there is a valid defense to such

---

[1] Ferguson is correct that, prior to 2023, Georgia lien law did not extend lien rights to chiropractors in relation to legal client funds. See OCGA §44-14-470 through §44-14-477 (2023) (adding chiropractors as a class of participants afforded lien protection).

6

lien, judgment, or agreement."). Ferguson opined at the hearing that if the chiropractor wanted to protect her interest independent of a lien, she should have gotten a letter of protection, which is "an entirely separate agreement from a lien" that serves as "an independent agreement between the treatment provider and the attorney."

The chiropractor testified that she was owed $4,300 for one of Ferguson's clients and $7,841 for the other,[2] and that she had not been paid any of it. She agreed that Ferguson had honored agreements similar to the Notice in the past. She testified that she "always thought this lien served as a letter of protection."

(d) After the hearing, the Special Master entered her Report and Recommendation. She rejected Ferguson's argument that he did not have a duty to pay the chiropractor a portion of the settlement funds. The Special Master concluded that Ferguson should not have relied on the title of the Notice to treat it as an imperfectible lien,

---

[2] The amount owed for the second client was disputed, and the Special Master found that the cost owed for each client was $4,300, for a total of $8,600.

but should instead have honored the substance, finding: "There is nothing in the document that limits [Ferguson's] promise to observe the terms of the agreement if, and only if, [the chiropractor] perfects a lien." And the Special Master concluded that Ferguson's "unilateral decision that [the chiropractor] had no interest in the settlement funds is not supported by the evidence."

The Special Master noted that Ferguson "presented no evidence" that "there was an industry practice that created a significant difference between the words contained in the Notice of Doctor's Lien and a Letter of Protection" that allowed him to disregard the Notice if it represented a lien, but not if it was a letter of protection. The Special Master found that Ferguson "knew when he executed the agreement [the chiropractor] could not perfect a lien," which meant "[h]e either relied on the terms of the agreement to protect [the chiropractor's] outstanding bill or he was intentionally deceptive and allowed [the chiropractor] to treat his clients and provide medical records to him with no intention of paying her out of the settlement proceeds." She further concluded

8

that the "only reason" for Ferguson to sign the Notice was "to indicate his cooperation in protecting [the chiropractor's] interest," observing that the Notice made clear that if Ferguson was unwilling "to cooperate in protecting [the chiropractor's] interest," the chiropractor could have demanded payment at the time of service.

The Special Master thus concluded that Ferguson violated Rule 1.15(I)(b)(2)(iii) when he failed to negotiate payment of the chiropractor's bills and Rule 1.15(I)(c) when he failed to notify her of the settlement and/or to deliver any settlement funds to her. She also concluded that Ferguson violated Rule 1.15(I)(d) by not segregating the settlement funds and by "disburs[ing] all of the … settlement funds in his possession without protecting [the chiropractor's] interest or at least encouraging [the clients] to resolve the matter."

As to discipline, the Special Master cited the framework set out in the *ABA Standards for Imposing Lawyer Sanctions* (1992) and concluded that Ferguson violated his ethical duty to safeguard property of a third party, concluding: "Although [Ferguson] relies on

9

black letter law to determine his responsibility to [the chiropractor], he has not considered his higher obligation under the Rules of Professional Conduct in his dealing with her." The Special Master determined that Ferguson acted knowingly and intentionally in his interactions with the chiropractor and concluded that his actions caused an actual injury to her in that she relied on Ferguson's assurances in the Notices to provide services without requiring contemporaneous payment and she had not been paid for the treatment she provided to Ferguson's clients. In mitigation, the Special Master noted that Ferguson had been a member of the Bar since 2004 with no prior disciplinary history; that he did not benefit financially from his actions; and that he participated in the disciplinary process and treated it seriously and with respect. See ABA Standards 9.32 (a), (b), and (e). In aggravation, the Special Master noted that Ferguson had substantial experience in the practice of law (personal injury law in particular), and that he failed to acknowledge the wrongful nature of his conduct. See ABA Standards 9.22 (g) and (i). Further, the Special Master concluded

10

that Ferguson's "insistence that he had no duty to honor the [Notice] suggests this conduct will continue unabated."

The Special Master recommended that Ferguson be suspended for a period of four months unless he provided within 180 days sufficient evidence to the Office of General Counsel that he made restitution to the chiropractor—in which case his suspension would be reduced to a Review Board reprimand. See *Matter of Cherry*, 305 Ga. 667 (2019) (imposing a public reprimand in a case with similar facts after the attorney showed that she had paid the injured third party in full).

(e) Both parties filed exceptions to the Special Master's Report and Recommendation, with the State Bar challenging the recommended discipline as too lenient, and Ferguson again arguing that he owed no duty to the chiropractor because he reasonably concluded that there was a defense to her interest under Rule 1.15(I)(b) and arguing that, even if he violated Rule 1.15(I), the Special Master's recommended sanction was disproportionate and

11

improperly characterized his good-faith belief that there was a legitimate legal dispute as a "lack of remorse."

The Review Board adopted the Special Master's factual findings and legal conclusions but rejected the Special Master's recommendation as to the appropriate level of discipline. With the exception of one member (who dissented), the Review Board recommended a 60-day suspension with payment of $8,600 in restitution as a condition precedent to reinstatement.[3] In support of its conclusion, the Review Board noted that in *Matter of Cherry*, 305 Ga. 667 (2019), this Court accepted a reprimand under similar circumstances "in no small part because restitution had already been paid," citing *Cherry*, 305 Ga. at 667, whereas here Ferguson not only "failed to pay [r]estitution, but he also intends to not pay it" and maintains that he did not violate Rule 1.15(I).[4]

---

[3] One member of the Review Board recommended a one-year suspension because of Ferguson's failure to admit wrongdoing.

[4] As explained further below, we conclude that no discipline is warranted in this case, but we remind the Bar, the Special Master, and the Review Board that "[a]ttorneys in disciplinary proceedings have the right, like all litigants, to advance good-faith, colorable arguments supporting their position" and that

12

Ferguson timely filed exceptions to the Review Board's Report and Recommendation, again contending that he could disregard the chiropractor's interest under Rule 1.15(I)(b) because there was a valid defense to the Notice and that the Special Master erred in relying on a lack of remorse or failure to acknowledge wrongdoing to aggravate his punishment where he acted in reasonable reliance on of the plain text of Rule 1.15(I)(b). In its response, the Bar requests that the Court uphold the Review Board's determination that Ferguson violated Rules 1.15(I)(b)(2)(iii), 1.15(I)(c), and 1.15(I)(d) by not honoring the terms of the written agreement with the chiropractor and that the Court impose at least a 60-day suspension with readmission conditioned on restitution in light of Ferguson's failure to show remorse.

---

"refusing to admit guilt from the outset generally means the mitigating effect of showing remorse—one factor among many—is absent, not that the aggravating effect of refusing to 'acknowledge [the] wrongful nature of [one's] conduct' is present." *In the Matter of Taylor*, 323 Ga. 214, 235-36 (2025).

2. *Analysis*

We have reviewed the record in this case, deferring to the Special Master's factual findings that "are supported by the record," but "review[ing] de novo the conclusions of law reached below on what rules were violated and what level of discipline is appropriate." *Matter of Tuggle*, 317 Ga. 255, 258 (2023) (noting that "because this Court recognizes that the special master is in the best position to determine the witnesses' credibility, it generally defers to the factual findings and credibility determinations made by the special master unless those findings or determinations are clearly erroneous" (emphasis removed)). Based on our review, we conclude that the State Bar has not carried its burden to prove "by clear and convincing evidence" that Ferguson violated any part of Rule 1.15(I) through his conduct. See *Matter of Tuggle*, 317 Ga. at 271 ("[T]he State Bar has the burden of proving violations of the GRPC by clear and convincing evidence, see Bar Rule 4-221.2 (b).").

The key questions in this case are (1) did Ferguson "reasonably conclude that there is a valid defense" to the Notice under Rule

14

1.15(I)(b), and (2) if he reached such a conclusion, did he have any remaining obligations regarding the chiropractor's interest under Rules 1.15(I)(c) and (d). We address each of these questions in turn.[5]

(1) *Did Ferguson reasonably conclude that there was a valid defense to the Notice?*

As laid out above, Rule 1.15(I)(b)(iii) mandates that lawyers "not disregard" a third party's interest in funds in the lawyer's possession if the interest "is known to the lawyer" and is based on "[a] written agreement by the client or the lawyer on behalf of the client guaranteeing payment out of those funds or property." Here, the chiropractor's interest satisfied Rule 1.15(I)(b)(2)(iii): it was known to Ferguson and was based on the Notice, which is a "written agreement" by Ferguson and his client "guaranteeing payment out of [settlement] funds or property."

But Rule 1.15(I)(b) concludes by providing that "[t]he lawyer may disregard the third person's claimed interest if the lawyer

---

[5] This Court requested supplemental briefing on these questions from the parties, and we have considered their responses in the analysis that follows.

reasonably concludes that there is a valid defense to such … agreement." Ferguson contends that he satisfied the portion of Rule 1.15(I)(b) that allows him to "disregard" the chiropractor's interest because he "reasonably conclude[d] that there is a defense" to the Notice: the Notice was notice of a lien against a plaintiff's "cause[] of action" for the provision of medical care, which is a statutory lien provided for in OCGA § 44-14-470 and must be perfected as provided in OCGA § 44-14-471, and the chiropractor undisputedly did not (and at that time could not) perfect such a lien under Georgia law. The Bar argues that Ferguson was not permitted to disregard the chiropractor's interest because there is no valid defense to the Notice, which it contends was a written agreement imposing an obligation independent of a lien.

(a) In answering whether Ferguson was permitted to disregard the chiropractor's interest under Rule 1.15(I)(b), we consider the text of the Notice as well as the relevant factual findings of the Special Master. Turning first to the text of the Notice, we acknowledge that in isolation—that is, when removed from the full context of the

16

Notice—some of the Notice language appears to support the Bar's position that the Notice created an independent obligation to pay the chiropractor.[6] For example, the portion of the Notice signed by the client stated that it "authoriz[ed] and direct[ed] you, my attorney, to pay directly to said doctor such sums as may be due owing for chiropractic/physical therapy service … and to withhold such sums from any settlement, judgment, or verdict which may be paid to you, my attorney." And Ferguson signed a portion of the Notice in which he agreed "to observe all the terms of the above and agree[d] to withhold such sums from any settlement, judgment, or verdict, as may be necessary to adequately protect and fully compensate said doctor above named."

But these terms must be viewed in context of the Notice as a whole. See *Langley v. MP Spring Lake, LLC*, 307 Ga. 321, 324 (2019)

---

[6] In deciding this case, we focus on the conclusions of the Special Master and the arguments made by the parties. Notably, the Special Master concluded—and the Bar has consistently argued—that the Notice is a written agreement creating an obligation to pay, independent of any lien. The Bar has never argued, and the Special Master did not conclude, that the Notice constitutes a contractual lien as the dissenting opinion contends.

17

("[I]t is axiomatic that contracts must be construed in their entirety and in a manner that permits all of the terms contained therein to be consistent with one another."). And viewed in that light, these agreements to pay the chiropractor could be interpreted—as Ferguson contends—as secured by a lien, as provided for in OCGA § 44-14-470, rather than existing as an independent obligation.[7] Specifically, the Notice is titled "Notice of Doctor's Lien," and the Notice is again referenced as a "lien" in which the client promises that if she changes attorneys, she will "promptly deliver a copy of this lien to any substituted or added attorney(s)." If the obligation

---

[7] OCGA § 44-14-470 provides liens to certain medical providers for "the reasonable charges" for "care and treatment of an injured person," and the "lien shall be upon any and all causes of action accruing to the person to whom the care was furnished." Although the dissenting opinion argues that Ferguson could not have reasonably concluded that the chiropractor was attempting to create a lien under this statute because chiropractors were not eligible for such a lien at the time, the title "Doctor's Lien," the directive to pay "to said doctor," and the fact that the financial obligation is for medical care and against "any settlement, judgment, or verdict" supports our conclusion that it was reasonable for Ferguson to conclude that the chiropractor was attempting (unsuccessfully) to create a lien under OCGA § 44-14-470. See also *Med-Care Sols., LLC v. Bey & Associates, LLC*, 362 Ga. App. 861, 866–67 (2022) ("Liens against a plaintiff's cause of action for the charges of his medical care are specifically established in OCGA § 44-14-470 et seq., which requires strict compliance with rules for the creation and perfection of such liens.").

18

is best understood as secured by a statutory lien, then Ferguson's promise to "observe all the terms of the above" and his agreement to withhold sums "necessary to adequately protect and fully compensate" the chiropractor could be read as limited to that which is necessary to protect the chiropractor's lien. Such an agreement could then be nullified by a defense that the lien was not valid under Georgia law.

In reaching this conclusion, we need not definitively decide as a matter of law whether the Notice created only an obligation secured by a statutory lien. We are sufficiently convinced that Ferguson's argument—that it was reasonable for him to conclude that the interest created by the Notice is limited to a statutory lien that was not perfected—is supported by the text of the Notice. We are convinced that the text of Rule 1.15(I)(b) allowed Ferguson to assert that defense, and the Bar has not presented clear and convincing evidence that Ferguson's assertion of the defense was not supported by the text of the Notice and by the text of Rule 1.15(I)(b).

(b) Turning to the Special Master's factual findings, we see none that mandate the conclusion that Ferguson did not reasonably conclude that there was a valid defense to the Notice. As noted above, the Special Master's finding that "[t]here is nothing in the document that limits [Ferguson's] promise to observe the terms of the agreement if, and only if, [the chiropractor] perfects a lien" accurately describes the express terms of the agreement. However, when read in full context, other language contained in the Notice indicates that it is secured by a lien. So this finding does not answer the ultimate question of whether Ferguson reasonably concluded that he had a valid defense to the Notice under Rule 1.15(I)(b). For the same reason—that is, because the Special Master did not construe the terms of the Notice in full context—we reject the Special Master's conclusion that Ferguson's "unilateral decision that [the chiropractor] had no interest in the settlement funds is not supported by the evidence." The language in the Notice indicating

20

that it is a lien is evidence that supports Ferguson's conclusion that there was a valid defense to the Notice under Rule 1.15(I)(b).[8]

Notably, we do defer to some of the Special Master's credibility and factual findings. But as explained more below, none of those findings mandates the conclusion that Ferguson did not reasonably conclude that he had a valid defense to the Notice under Rule 1.15(I)(b).

First, we defer to the Special Master's finding that Ferguson failed to present evidence that there is "an industry practice" of treating a notice of a lien and a letter of protection differently. But that finding does not prevent Ferguson from reasonably concluding that he had a valid defense to the Notice based on the language of

[8] Notably, Ferguson does not argue that he was permitted to disregard the chiropractor's interest simply because his clients told him to, nor has he purported to "arbitrate a dispute" between his clients and the chiropractor. See Comment 3 to Rule 1.15(I) (explaining that a lawyer "may have a duty under applicable law to protect such third-party claims against wrongful interference by the client" and "should not unilaterally assume to arbitrate a dispute between the client and the third party") and Comment 3A (directing attorneys to hold funds in dispute for a reasonable period of time while the interested parties attempted to resolve the dispute and, if no resolution could be reached, to interplead the disputed funds). Instead, Ferguson asserts that he conducted research at the instruction of his clients and that research led him to conclude that there was a valid defense to the Notice under Rule 1.15(I)(b).

the Notice. And the Bar—the party with the burden of proof—has not presented any evidence that a notice of a lien always creates a legally enforceable obligation even if the third party fails to perfect the lien.

Second, we defer to the Special Master's factual findings—which she seems to have weighed heavily—that Ferguson "knew when he executed the agreement [the chiropractor] could not perfect a lien" and that the "only reason" for Ferguson to sign the Notice was "to indicate his cooperation in protecting [the chiropractor's] interest." However, even deferring to those findings, we do not view them as controlling our legal analysis. In light of the Special Master's findings in this respect, we see at least two possible scenarios. In one scenario, Ferguson "tricked" the chiropractor into relying on an unenforceable agreement, pretending that he would protect her interest to induce her to treat his clients (but knowing he would not facilitate payment from the clients). Such conduct might well be a violation of some other rule or law, but it would not

be a violation of Rule 1.15(I).[9]  In a second scenario, which seems equally plausible, Ferguson intended to pay the chiropractor at the time he signed the Notice because he viewed the Notice—at the time he signed it—as imposing an obligation beyond a lien (that is, he viewed it as a written agreement to pay but not as a technical lien), but then later discovered that there was a strong legal case for the document being an unenforceable lien—something he did not realize until his clients instructed him not to pay the chiropractor.  Under that scenario, Ferguson's late discovery would not prevent him from asserting that there was a valid defense under Rule 1.15(I)(b) that would allow him to follow his clients' instructions not to pay.

Finally, we consider the Special Master's suggestion that Ferguson cannot rely on "black letter law" to conclude that he has a valid defense to the Notice because he has a "higher obligation" under the Rules of Professional Conduct.  That extra-textual

---

[9] In its supplemental brief, the Bar asserted that if Ferguson entered an agreement he believed was unenforceable "to induce a medical provider to provide services that they might otherwise withhold," it would "border[] on fraudulent conduct, potentially sanctionable under Rule 8.4(a)(4)."  Notably, however, the Bar has not charged Ferguson with a Rule 8.4(a)(4) violation.

interpretation of Rule 1.15(I) presents tension with Rules 1.1 and 1.3, which require that lawyers represent their clients competently and diligently. At the very least, we conclude that a lawyer should be permitted to rely on the text and context of the Rules of Professional Conduct, as well as the law governing a third-party interest, in determining whether there is a valid defense to an agreement that allows a lawyer to disregard a third-party interest under Rule 1.15(I)(b).

(c) In light of the analysis above, we conclude that the Bar has not proven by clear and convincing evidence that Ferguson's conclusion that he had a valid defense to the Notice was unreasonable under Rule 1.15(I)(b), and therefore has not proven by clear and convincing evidence that Ferguson violated Rule 1.15(I)(b). To be clear, we do not decide definitively whether Ferguson's argument that the Notice was limited to a statutory lien (and was therefore unenforceable here) would succeed if, for example, the chiropractor filed a lawsuit against Ferguson seeking payment; that is not the question presented here. The question here

24

is limited to whether the Bar has proven by clear and convincing evidence that Ferguson violated Rule 1.15(I)(b) by choosing to "disregard" the chiropractor's interest. Because the Bar has failed to carry its burden, we conclude that Ferguson did not violate Rule 1.15(I)(b)(iii) by "disregarding" the chiropractor's interest after reasonably concluding that there was a defense to the Notice under Rule1.15(I)(b).

    (2) *Did Ferguson have any remaining obligations regarding the chiropractor's interest under Rules 1.15(I)(c) and (d)?*

Because we have concluded that Ferguson did not violate Rule 1.15(I)(b) by "disregard[ing]" the chiropractor's interest given that Ferguson reasonably concluded there was a defense to the Notice, we must now address whether Ferguson still had any obligations to protect and satisfy that interest under Rules 1.15(I)(c) and (d) that he failed to fulfill.

In this respect, Rule 1.15(I)(b) says a lawyer "may not disregard" a third-party interest if it "is known to the attorney" and is based on "[a] statutory lien," "[a] final judgment addressing

25

disposition of those funds or property," or "[a] written agreement by the client or the lawyer on behalf of the client guaranteeing payment out of those funds or property." And subsections (c) and (d) impose specific requirements on lawyers regarding third-party interests. See Rule 1.15(I)(c) (requiring that a lawyer notify the third party upon receiving funds in which the "third person has an interest" and that a lawyer "promptly deliver" the funds the "third person is entitled to receive," and, if requested "render a full accounting"); Rule 1.15(I)(d) (requiring that if the lawyer "is in possession of funds … in which both the lawyer and a client or a third person claim interest," the lawyer must keep the property separate "until there is an accounting and severance of their interests," and requiring the lawyer to "promptly distribute all portions of the funds … as to which the interests are not in dispute").

In determining whether Ferguson had remaining obligations under Rules 1.15(I)(c) and (d) after he concluded that there was a "valid defense" to the Notice under Rule 1.15(I)(b), we consider first the text and structure of the Rule and then the Bar's proposed

26

interpretation, which we reject. See *Matter of Brown*, 319 Ga. 465, 471 (2024) ("In construing the Georgia Rules of Professional conduct, we first look to the text of the relevant Rules, which we construe according to the principles that ordinarily apply in the interpretation of legal text." (cleaned up)).

(a) Although none of the language in Rules 1.15(I)(c) or (d) expressly defines the third-party interest covered by those provisions as the third-party interest defined in Rule 1.15(I)(b),[10] the structure and text of the rule indicates that Rule 1.15(I)(b) provides the parameters of a third-party interest that a lawyer must heed, and subsections (c) and (d) impose certain requirements as to that third-party interest. The practical result is that only an interest that meets the criteria laid out in Rule 1.15(I)(b) is an interest that is subject to the requirements set forth in (c) and (d).

---

[10] See Rules 1.15(I)(c) (requiring that a lawyer provide notice when receiving funds in which a "third person has an interest"), (d) (imposing certain requirements when a lawyer is in possession of funds in which "a third person claim[s] interest").

Interpreting Rule 1.15(I)(b) as limiting what third-party interests are implicated by Rules 1.15(I)(c) and (d) prevents an untenable interpretation of those rules under which lawyers would, for example, be required to segregate funds under subpart (d) for *any* asserted third-party interest—no matter how frivolous—and delay delivering these funds to their clients and third parties with valid interests because of the requirement in subpart (d) that when a lawyer is in possession of funds "in which both the lawyer and a client or a third person claim interest" and "a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved." This construction also gives meaning to subsection (b) by allowing subsections (c) and (d) to define what obligations a lawyer has to a third party interest he "may not disregard": if subsections (c) and (d) applied to all claimed third-party interests, regardless of whether they are interests that "may not [be] disregard[ed]" under subsection (b), it is not clear what different or additional obligations would apply to the specifically enumerated third-party interests that "may

28

not [be] disregard[ed]" in Rule 1.15(I)(b).  See *Brown,* 319 Ga. at 476 (applying the canon of statutory interpretation that "statutes relating to the same subject matter, including subsections therein, should be construed together and harmonized whenever possible").

Notably, this Court in *Matter of Brown*, 319 Ga. 465, took a similar approach to interpreting Rule 1.15(I) as we do today.  There, we "constru[ed] all of the subsections of Rule 1.15(I) together in harmony," and concluded that earlier subsections of Rule 1.15(I) informed later subsections.  319 Ga. at 476.  Specifically, we held that although the duties in subsection (c) were not explicitly limited to duties performed during the practice of law, "when construed together and viewed in context, subsections (b) through (d) build on a lawyer's duties and responsibilities generally described in subsection (a)" and concluded that subsections (b) through (d) were "constrained by the language of subparagraph (a) that is reasonably

29

read as limiting the Rule to lawyers acting in the course of their legal representation of clients."[11]  319 Ga. at 476.

From this understanding of the interaction between the relevant subprovisions of Rules 1.15(I)—that is, subprovisions (b), (c), and (d)—it follows that if a third-party interest can be "disregarded" under Rule 1.15(I)(b), it can be "disregarded" as to Rules 1.15(I)(c) and (d) as well, meaning a lawyer can "fail to consider or pay attention to" that interest for purposes of Rule 1.15(I) and has no obligations flowing from it under Rules 1.15(I)(c) and (d).  See *Disregard*, Oxford American Dictionary and Thesaurus (2nd ed. 2009) ("fail to consider or pay attention to something").[12]

---

[11] Rule 1.15(I)(a), which Ferguson was not charged with violating, requires that a lawyer hold funds of "third persons that are in a lawyer's possession in connection with a representation" separate from a lawyer's own funds.

[12] The relevant language allowing a lawyer to "disregard" a third-party interest in certain circumstances was added in 2011.  See Georgia Advance Sheets, Vol. 4, No. 23 (Dec. 8, 2011).  See also *Docs of CT, LLC v. Biotek Servs., LLC*, 321 Ga. 588, 592 (2025) (explaining that this Court may "look to dictionaries from around the time the relevant legal text is enacted as a helpful starting point for understanding the meaning of that text").

(b) The Bar largely agrees with our interpretation of Rule 1.15(I)(b) through (d) as laid out above, with one important exception. The Bar argues that the notice requirement in Rule 1.15(I)(c) applies even to an interest the lawyer may disregard under Rule 1.15(I)(b) because there is not "contrary or qualifying language" to the notice requirement. The Bar does not clearly explain this theory, but it may be relying on the presence of "qualifying" language elsewhere in Rule 1.15(I)(c). Specifically, Rule 1.15(I)(c) requires funds to be "promptly deliver[ed]" "[e]xcept as stated in this rule or otherwise permitted by law or by agreement with the client." The notice requirement in (c) does not contain this type of caveat.

The presence or absence of such, however, does not change the meaning of "disregard" in Rule 1.15(I)(b) or change the fact that, as explained above, Rule 1.15(I)(c) depends on Rule 1.15(I)(b) to define the scope of third-party interests that are governed by the Rule. And in any event, we conclude that the language the Bar points to in Rule 1.15(I)(c), "[e]xcept as stated in this rule," serves a different purpose: this language helps ensure that the delivery requirement in

subsection (c) does not conflict with the mandate in subsection (d) to separate and hold funds when more than one party claims an interest in such funds. Compare Rule 1.15(I)(c) ("[A] lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive.") with (d) ("If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the funds or property as to which the interests are not in dispute."). In this way, the qualifying language in subsection (c) may affect the interaction of subsections (c) and (d), but it does not change that subsection (b) determines the parameters of a third-party interest for purposes of the requirements contained in subsection (c).

(c) In light of the above analysis, we conclude that an attorney who can "disregard" a third-party interest under Rule 1.15(I)(b) has no further obligations to that interest under Rules 1.15(I)(c) and (d). Because, as discussed above, the Bar has failed to show by clear and

convincing evidence that Ferguson violated Rule 1.15(I)(b)(2)(iii) when he disregarded the chiropractor's interest, the Bar has similarly failed to prove that Ferguson violated Rules 1.15(I)(c) and (d).

3. In conclusion, we note that this opinion should not be read as approval of Ferguson's actions in this case. Even so, the Bar has failed to prove that Ferguson violated Rules 1.15(I)(b), (c), and (d) with these actions. Thus, we impose no discipline and dismiss the case. See *Matter of Mignott*, 317 Ga. 764, 767 (2023) (imposing no discipline and dismissing the case where the Bar failed to prove by clear and convincing evidence that the lawyer violated the Rules as charged).

*No discipline imposed, and case dismissed. All the Justices concur, except McMillian, J., who dissents.*

McMILLIAN, Justice, dissenting.

Because I believe that the "Notice of Doctor's Lien" for each client constituted contractual liens and that Ferguson could not reasonably conclude that he had a defense to those contractual liens, I respectfully dissent.

A "lien" is generally "used to denote a legal claim or charge on property, either real or personal, for the payment of any debt or duty." 1 Ga. Jur. Property § 10:1 (February 2026 update). Georgia law recognizes liens created by operation of law or by contract. See, e.g., OCGA § 44-14-325 ("All transfers and assignments of … evidences of indebtedness which are secured either *by contract lien or out of which a lien springs by operation of law* shall be sufficiently technical and valid where the transfer or assignment plainly seeks to pass the title to any of the papers in writing from one person to another." (emphasis added)). A lien created by statute requires strict compliance and is strictly construed against the creditor. See, e.g., *Horner v. Robinson*, 299 Ga. App. 327, 329 (2009) ("Because lien statutes are in derogation of the common law, we must construe

34

them against a lien claimant[,]" and "a lien claimant who seeks to take advantage of a statute must strictly comply with its provisions.").

However, a contractual lien, sometimes referred to as an "equitable lien" does not require a particular form. See, e.g., *Country Greens Village One Owner's Assoc., Inc. v. Meyers*, 158 Ga. App. 609, 611 (1981) ("No particular form is required for an agreement to constitute a lien."). A security interest arising by agreement is generally "effective according to its terms between the parties, against purchasers of the collateral, and against creditors."[13] *Med-Care Solutions, LLC v. Bey & Assocs., LLC*, 362 Ga. App. 861, 863 (2022) (punctuation omitted). See also *Routon v. Woodbury Banking Co.*, 209 Ga. 706, 708 (1953) ("A special or equitable lien is … simply a right of a special nature over the [property], which constitutes a

---

[13] Although not relevant here, an equitable lien may also be available when a party was entitled to a statutory lien but was prevented from perfecting the lien. See, e.g., *Clover Cable of Ohio v. Heywood*, 260 Ga. 341, 344 (1990) ("When a party entitled to a statutory lien has been prevented from perfecting such lien by the acts of the adverse party, it has been held that such party is entitled to an equitable lien for the improvements made on a quantum meruit theory." (punctuation omitted)).

charge or encumbrance upon the [property].”); *Chapple v. Hight*, 161 Ga. 629, 632 (1926) (“[A] special lien on specific property may be decreed whenever under the rules of equity the circumstances require this remedy.”).

A contractual lien on personal property is governed by Article 9 of the Georgia Uniform Commercial Code (“UCC”) unless the lien is “given by statute or other rule of law for services” or some other statute “expressly governs the creation, perfection, or priority.” See OCGA § 11-9-109(a)(1) (providing that Article 9 of the UCC applies to a “transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract”); OCGA § 11-9-109(c)(2) (“This article does not apply to the extent that: [a]nother statute of this state expressly governs the creation, perfection, or priority.”); OCGA § 11-9-109(d)(2) (Article 9 of the UCC does not apply to a “lien, other than an agricultural lien, given by statute or other rule of law for services or materials”). See generally Georgia Law of Damages § 24:3 (“The secured transactions provisions of the Uniform Commercial Code do not generally apply to liens created by

statute, such as mechanics' and materialmen's liens. These liens are governed by OCGA §§ 44-14-360 et seq., which sets out procedures for perfecting and foreclosing them."). Under the UCC, a security interest attaches to collateral when "(1) there is a written security agreement signed by the debtor and containing a description of the collateral; (2) the secured party has given value to the debtor; and (3) the debtor has 'rights' in the collateral." *Med-Care Solutions*, 362 Ga. App. at 864. See also OCGA § 11-9-203(a)-(b).

With this legal background in mind, I now turn to the question of whether Ferguson was permitted to disregard the chiropractor's interest under Georgia Rule of Professional Conduct 1.15(I)(b), which provides in relevant part that "[t]he lawyer may disregard the third person's claimed interest if the lawyer reasonably concludes that there is a valid defense to such lien, judgment, or agreement." The majority opinion holds that it was reasonable for Ferguson "to conclude that the interest created by the Notice is limited to a lien that was not perfected" as "supported by the text of the Notice." As best I can tell, Ferguson is asserting that the Notices were an

37

attempt to assert a statutory lien under OCGA § 44-14-470 through § 44-14-477 because they were entitled "Notice of Doctor's Lien" and that because chiropractors were not afforded protection under those lien statutes at that time, the chiropractor could not perfect the lien and it could be ignored.

However, the parties appear to agree, as does the majority opinion, that chiropractors could not assert a statutory lien under OCGA § 44-14-470 at the time the Notices were created.[14] And Ferguson has not asserted that another statute creates the lien that is evidenced by the Notices. Moreover, the Notices themselves by their text do not refer to a statute or imply that the lien originated by statute. And, as described above, there is ample caselaw,

_____

[14] At the time of settlement of the claims, OCGA § 44-14-470(b) (2009) provided in relevant part:

> Any person, firm, hospital authority, or corporation operating a hospital, nursing home, or physician practice or providing traumatic burn care medical practice in this state shall have a lien for the reasonable charges for ... care and treatment of an injured person, ... upon any and all causes of action accruing to the person to whom the care was furnished ... subject, however, to any attorney's lien.

38

statutory law, and treatises that explain that liens created by statute are distinct from liens created by contract. Thus, it was not reasonable for Ferguson to disregard the chiropractor's interest in the settlement proceeds on the grounds that OCGA § 44-14-470 – a statute that did not apply – did not allow the chiropractor to perfect the liens.

Instead, a reasonable attorney in Ferguson's position should have been able to determine after some basic research that the Notices constituted contractual liens and that they may be governed by Article 9 of the UCC.[15]  The Notices here sufficiently described

---

[15] To the extent that the majority opinion concludes that the Bar failed to carry its burden by not making this argument, I respectfully disagree. In the Formal Complaint, the Bar alleged: "The signed 'Notices of Doctor's Lien' are 'written agreements' as contemplated by GRPC 1.15(I)(b)(iii)." Also, in its brief in response to Ferguson's exceptions, the Bar argued:

> The State Bar has never asserted that Respondent disregarded a statutory lien under Rule 1.15(I)(b)(2)(i). Rather, Respondent violated Rule 1.15(I)(b)(2)(iii) because he violated the written agreement by the client and the lawyer guaranteeing payment out of the respective settlements.

Rather, the Bar argued that the chiropractor's interest is based on contract:

> Respondent continues to argue that the written agreements he signed were ineffective because no liens were filed or recorded.

the debt (payments owed for chiropractic treatment) and the property against which the debt was secured (the plaintiffs' settlement proceeds), which caselaw has long recognized are contractual liens. See *Wylly v. Screven*, 98 Ga. 213 (1896) (concluding agreement constituted a lien where it clearly described the debt to secure and the property upon which it was to take effect); *Meyers*, 158 Ga. App. at 611 ("It is sufficient if [the agreement] clearly indicates the intention to create a lien, the debt to secure which it is given, and the property upon which it is to take effect." (punctuation omitted)). Moreover, a review of well-known treatises on Georgia law would have shown that contractual liens are

---

(Respondent's Supplemental Brief, p. 3). This argument conflates the separate types of interests protected under Rule 1.15(I), and that are set forth in the disjunctive in Rule 1.15(I)(b)(2). *The State Bar has never alleged that Respondent disregarded a statutory lien or a final judgment. Rather, Respondent violated Rule 1.15(I)(b)(2)(iii) because he ignored two written agreements by his clients which he himself also signed guaranteeing payment out of the settlements.*

(Emphasis added.) Thus, despite the majority opinion's conclusion that the Bar has never argued that the Notices evidenced contractual liens, the Bar clearly made the argument that the Notices did not constitute statutory liens and that instead the liens were created by contracts.

recognized in Georgia, that contractual liens are distinguished from statutory liens, and that contractual liens on personal property may be governed by Article 9 of the UCC.[16] See 1 Ga. Jur. Property § 10:1 (describing the types of liens and how they are created); Georgia Law of Damages § 24:3 (liens created by statutes like OCGA § 44-14-470 are not covered under Article 9 of the UCC).

Because Ferguson has not asserted any reasonable basis to conclude that he had a defense to the contractual liens; his actions involve dishonesty, fraud, deceit or misrepresentation; and we have an obligation to insure that "other lawyers will be deterred" from similar conduct and that "the public will be given confidence that this Court will maintain the ethics of the legal profession," *In the Matter of Cook*, 311 Ga. 206, 219 (2021) (Nahmias, P.J., dissenting), I would accept the Special Master's recommendation to suspend

---

[16] I recognize that lien law and secured transactions are complex legal subjects, but it is reasonable to require an attorney seeking to disregard a third party's interest under Rule 1.15(I)(b) to conduct basic research on whether there is a valid defense. If the lawyer is unsure about the proper disposition due to the complexity of the law, Rule 1.15(I)(c) and (d) provide a mechanism by which to resolve any dispute over the funds.

Ferguson for a period of four months unless he provides within 180 days sufficient evidence to the Office of the General Counsel that he made restitution to the chiropractor – in which case his suspension would be reduced to a Review Board reprimand. See *In the Matter of Cherry*, 305 Ga. 667, 670–71 (2019) (accepting petition for voluntary discipline and ordering that Cherry be administered a public reprimand after she voluntarily paid the chiropractor's bill in full). I therefore respectfully dissent.